AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Alabama

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.   2:23mj119-GMB |
| THE "DEVICE" – AN IPHONE CURRENTLY LOCATED AT THE FBI – MONTGOMERY RESIDENT AGENCY | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Middle _____ District of _____ Alabama _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1038 | False Information and Hoaxes |

The application is based on these facts:
See attached affidavit incorporated herein by reference and made part of this application.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Joe K. Ennis/FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/18/2023 _____

_____
*Judge's signature*

City and state: Birmingham, AL

Gray M. Borden/United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| IN THE MATTER OF THE SEARCH OF THE "DEVICE" – AN IPHONE CURRENTLY LOCATED AT THE FBI – MONTGOMERY RESIDENT AGENCY | Case No._____ |
| --- | --- |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Joe K. Ennis, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – the Device (more specifically described below) – which is currently in law enforcement possession, and the extraction from the property of electronically stored information described in Attachment B.

2.      I, Joe K. Ennis, am a Special Agent (SA) of the Federal Bureau of Investigation (FBI). I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigation of, and make arrests for, offenses enumerated in Title 18. In the course of my duties as special agent, I have investigated crimes committed on military installations, violent crimes against children, complex white-collar crimes, civil rights, public corruption, and crimes against the National Security of the United States of America, which include investigating terrorism and bombing matters.  Further, I have also investigated criminal violations related to Indian Country crimes, as explained in 18, United States Code, Section 1151 and as it pertains to the Major Crimes Act (MCA).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a gray colored iPhone, smart phone in a black "Otterbox" rubber case, hereinafter, the "Device". The Device is currently located at the Federal Bureau of Investigation (FBI) – Montgomery Resident Agency, located at 1 Commerce Street, Suite 500, Montgomery, Alabama 36104.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      On Sunday, May 14, 2023, around 1:25 PM, Betty Harris of Montgomery, Alabama called the Montgomery Emergency Communications Center after locating a pink T-Mobile bag sitting outside of the entrance to 1 Commerce Street, Montgomery, Alabama 36104. Originally thinking someone left their phone on the sidewalk, Harris investigated the top of the open bag, where she discovered multiple red sticks taped together, which appeared to be dynamite cartridges to Harris. She also noticed wires on top of the item and what appeared to be a "timer." Lastly, Harris described seeing a photograph of a person underneath the suspected device, and the bag had "Happy Mother's Day" written on the front of it. After seeing this, she left the area and notified law enforcement.

7.      Due to the nature of the call and the items found, responding patrol units notified the Montgomery Police Department (MPD) Bomb Squad. At this time, multiple buildings were evacuated, and patrons were kept from traveling through the area, which interfered with normal day-to-day activity in the area.

8.      Upon arrival on scene, the MPD Bomb Squad approached the suspected improvised explosive device (IED) to retrieve an initial x-ray of the contents inside of the T-Mobile bag. Once

2

an x-ray was received, it did not appear to have certain components which would lead bomb technicians to believe it was a functioning device or cause a detonation of the device.

9.      Still using caution, the items were extracted from the bag utilizing a robot. Once better footage was obtained of the suspected device, bomb technicians walked back to the items and officially deemed them as "safe."

10.     The device consisted of five red PVC pipes stuffed with a clay-like material. The pipes were arranged in a manner, sitting on top of each other and secured with electrical tape. On top of the pipes was a remote, which appeared to be a remote consistent with LED lighting kits, where you can change the color of the lights, adjust the pattern of strobing, etc. The remote had one red and one black coiled wire protruding from the back of it, but visible to a subject looking into the bag.

11.     FBI Task Force Officer Keith Pendley is a Montgomery Police Officer and was participating in this investigation due to his bomb training. Upon conducting a review of the items after being rendered safe, TFO Pendley immediately recognized the photograph that was seen underneath the suspected IED. The photograph was of Myrtle Ozell Chandler Miller. Myrtle Miller was the deceased mother to white female, Fredrika Morrissette Miller, DOB: 12/01/1968. On the photograph, officers also noticed "I love you forever, Mama" written on the picture. Underneath that was the word "Justice" underlined.

12.     The MPD is familiar with Fredrika Miller due to her frequently contacting the MPD - Criminal Investigations Division, located at 1751 Congressman W. L. Dickinson Drive, Montgomery, Alabama to report that she believed Montgomery Mayor Steven Reed was responsible for her mother's death and losing her home in the Cloverdale Community of Montgomery, Alabama. She also reports that a former MPD Officer raped her. Fredrika Miller has

3

posted these claims to a publicly accessible blog website, where she refers to herself as "The Peppermint Unicorn." The website URL is "peppermintunicorn.me."

13.     One of the first photographs on the website is the exact photograph officers located underneath the suspected IED of Myrtle Miller. The same photograph that was inscribed "I love you forever, Mama."

14.     Members of the MPD Bomb Squad/ FBI began investigating the incident, to include conversing with the MPD Strategic Technology and Resource (STAR) Center for video surveillance in the area of 1 Commerce Street and other downtown locations around the time of the offense. While reviewing video surveillance around 1 Commerce Street, Montgomery, Alabama, Sergeant D. Lowe (MPD-STAR Center) located a white Toyota 4Runner bearing Alabama license plate ZBDNA driving by the area of Commerce Street multiple times before the item was located by Harris around 1:25 PM. The vehicle also had a sticker on the bottom left side of the back windshield. A search of the Law Enforcement Tactical System (LETS) revealed the vehicle to be registered to Miller's mother.

15.     Furthering the investigation into the hoax device, an exigent historical phone ping was conducted by Sergeant A. C. Patterson. The historical data was conducted on the phone number: 702-601-3681. This phone number is a known phone number for Fredrika Miller. The results of the ping showed the device in the area of Commerce Street during the same time the Toyota 4Runner was seen in the area as well. The number frequently showed the device in the area of Elmore County, Alabama as well.

16.     On May 16, 2023, the white Toyota 4Runner bearing Alabama license plate ZBDNA, and displaying the same sticker observed on the vehicle while it was in downtown Montgomery, was observed at 2656 Old Wetumpka Highway 231, Wetumpka, Alabama 36092.

4

This is the address to the Swayback Campground. The 4Runner was parked directly next to a STARCRAFT AR-ONE camper, which is tan/white/red in color.

17.    Around 1:00 PM, the white Toyota 4Runner left the residence/camper. The vehicle was occupied by Miller and her husband, Gary Sauer. The vehicle was stopped near the intersection of Rock Springs Road and Rifle Range Road, Wetumpka, Alabama by the Elmore County Sheriff's Office. Miller and Sauer were both detained and transported to the MPD-CID, along with the 4Runner, for further investigation.

18.    A search warrant was conducted on the camper and the Toyota 4Runner occupied by Miller. Inside of the 4Runner, MPD Detectives located a cellular device belonging to Miller (the Device). This phone was a gray iPhone in a black "Otterbox" rubber case. The background photograph on the device was the same picture of the defendant's mother from both her website and the hoax explosive.

19.    The device was in the passenger seat of the 4Runner where Miller had been seated. Ms. Miller informed law enforcement that the phone belonged to her.

20.    After the search warrants, Miller was advised of her *Miranda* rights and agreed to provide a voluntary statement. During her statement, she advised that she was in downtown Montgomery on Mother's Day (May 14, 2023). She stated she made the hoax device and made it to resemble an actual explosive/destructive device. Miller placed the item into a T-Mobile bag, wrote "Happy Mother's Day" on the bag, and placed a photograph of her mother inside.

21.    Miller claimed she wanted to get the most attention from her hoax device, so she decided to place it at the building where she knew federal employees worked. Miller wanted to catch the attention of the FBI, or another federal agency, to listen to her about the situation with Mayor Steven Reed and the MPD Officer who allegedly raped her.

5

22.     Miller admitted to using her cell phone (the device) to access the PARKMOBILE app to pay for parking, twice, for two separate parking spots on 1 Commerce Street on Mother's Day when she placed the device. The parking was on the Montgomery Street side of the building, which was also the same side of the street the hoax device was placed.

23.     1 Commerce Street, Montgomery, Alabama is a building leased to multiple businesses and federal law enforcement agencies, including: the Federal Bureau of Investigation, the United States Marshals Service, and the United States Secret Service.

24.     Miller admitted to using the phone to record videos that she posted on her blog, peppermintunicorn.me. Miller posted one blog, https://youtu.be/iofo2xXHgNk , that Mayor Reed would hear from her on Mother's Day. On another blog was a picture of a shotgun and Hevi Bismuth 16-gauge shotgun shells box and 19 shotgun shells with the title "Going Target Practicing" and "No animals will be harmed…I do not hurt precious animals. I do not hurt animals. Just making sure everyone who does not know me well out there in the internet world knows that fact (with the symbols of a smiley face, a peppermint candy, and a unicorn's head)."." "-The Peppermint Unicorn (with the symbols of a peppermint candy, and a unicorn's head)."

25.     Lastly, in an interview with Miller's husband, Gary Sauer, he claimed he did not know she constructed the device and placed it at a building in downtown Montgomery. Sauer stated Miller left their camper on Mother's Day, and advised she was going to the store. Sauer was shown a photograph of the package, to which he identified the T-Mobile bag was his. He recently purchased an item from the T-Mobile store, and said that was the bag it was placed in. Sauer also confirmed the remote was to their lights at the camper.

26.     Miller was ultimately charged with one count of Possession/Distribution of a Hoax Device Represented as a Destructive Device or Weapon (13A-10-196c). She was transported to

6

the Montgomery County Detention Facility. A criminal complaint/arrest warrant was obtained on May 17, 2023.

27.     It is believed that the device belonging to Miller will contain evidence about the manufacturing, possession, and distribution of the hoax device, as well as evidence showing the time and date of its placement. The device will also show evidence of the blogs Miller posted regarding Mayor Reed hearing from her on Mother's Day.

28.     The Device Examiner believes the device may also contain evidence of searches for news articles regarding the recovery of the hoax device due to Miller admitting she was curious as to why she did not see or hear anything on the news about the hoax device being found. The device is also likely to contain evidence related to her parking her vehicle during the placement of the hoax device.

29.     The Device is currently in storage at the FBI – Montgomery Resident Agency, located at 1 Commerce Street, Montgomery, Alabama. In my training and experience, I know that the Device has been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the MPD and FBI.

## TECHNICAL TERMS

30.     Based on my training and experience, I use the following technical terms to convey the following meanings:

> a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

7

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading global positioning system ("GPS") technology for determining the location of the device.

b. Computer: A computer refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 USC 1030(e)(1).

c. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users

8

can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

31.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

33.     *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

        a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

9

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

35.     *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

36.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully Submitted,

Joe K. Ennis
Special Agent, FBI

Subscribed and sworn to before me on July 18, 2023. by telephone on 3

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is a gray colored iPhone, smart phone in a black "Otterbox" rubber case, hereinafter, the "Device". The Device is currently located at the FBI – Montgomery Resident Agency, located at 1 Commerce Street, Montgomery, Alabama 36104. Below are photographs of the Device.



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

12

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, 1038, including:

    a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    b. Records of Internet Protocol addresses used;

    c. Identification documents, to include information and photographs;

    d. Social Media platforms, phone applications, or any other electronic data stored in the phone;

    e. All bank accounts, checks, credit card bills, account information, and other financial records;

    f. Digital media, videos, photographs, call logs, text messages, message applications;

    g. Any information related to the source of the materials used to manufacture the hoax device placed at 1 Commerce Street, Montgomery, Alabama, to include any other transactional information (including purchase amount, purchase methods, source names, addresses, phone numbers, or other identifying information);

    h. Any other electronic data stored within the cell phone, SIM card and/or its memory card;

13

       i. Any electronic data indicating the use of PARKMOBILE or other parking applications.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent reviews.

14